# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs November 4, 2003

## STATE OF TENNESSEE v. JOHN JOHNSON

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 00-5917, 00-5918    Joseph B. Dailey, Judge**

---

### No. W2002-01333-CCA-R3-CD  - Filed November 18, 2003

---

The jury convicted the defendant of especially aggravated robbery and theft over $10,000.  The trial court imposed consecutive twenty-five-year and ten-year sentences, respectively.  On appeal, the defendant argues: (1) there was insufficient evidence to support his conviction for especially aggravated robbery; (2) the trial court erred in not allowing him to move from the defense table to view evidence on a monitor; and (3) the trial court erred in sentencing him.  We affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Robert Little, Maplewood, New Jersey, for the appellant, John Johnson.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stephen P. Jones, Jennifer S. Nichols, and Amy P. Weirich, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On November 3, 1999, Edgar Hawkins, a courier, was leaving Long Hardware in Memphis with cash deposits when the armed defendant demanded the bag holding the money.  A struggle ensued and the defendant shot Hawkins in the leg.  The defendant was convicted of especially aggravated robbery.  The defendant was also convicted of theft over $10,000 for exercising control over the stolen truck he drove to the scene of the offense.  The trial court imposed consecutive twenty-five-year and ten-year sentences, respectively.  This appeal ensued.

## PROOF AT TRIAL

Edgar Hawkins testified he owned a courier service which picked up cash deposits at businesses and delivered them to banks.  He recounted he had just picked up over $57,000 from the hardware store, placed the deposit in his green shoulder tote bag, and exited the store when he

noticed a teal Ford pickup truck parked behind his van. According to Hawkins, the defendant approached him and said, "Drop it off, dog." Hawkins stated the defendant then put a semi-automatic pistol to his head and said, "Give me the bag." He said he gave the defendant the bag, and the defendant shot him in the leg. He testified he and the defendant then struggled over the gun for an extended time "all over that parking lot." Hawkins stated he finally wrested the gun away from the defendant just before the police arrived. The police cuffed both the defendant and Hawkins, not knowing at that point which one was the perpetrator.

Kimberly Stevens, the hardware store employee, testified Hawkins picked up the bank deposits and exited the store. She said she saw the defendant, who was wearing a black ski mask and holding a gun, get out of the teal truck and point the gun at Hawkins. She testified Hawkins and the defendant struggled over the bag and the gun. She heard a gunshot when the defendant and Hawkins moved behind her truck, which was in the parking lot. She said that when the defendant and Hawkins returned from behind the truck, they no longer had the bag and were still struggling over the gun. According to Stevens, Hawkins' green bag was later found behind her truck. She indicated the men continued to struggle over the gun until the police arrived.

Andre Farmer testified that his teal green Ford Ranger pickup truck was stolen the week before the robbery. Farmer stated his truck was stolen at a gas station, although the defendant was not the person who actually stole the truck. Farmer identified his truck as the one the defendant drove to the hardware store.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant maintains the evidence was insufficient to support his conviction for especially aggravated robbery because: (1) there was insufficient proof he completed the offense by taking the money from the victim; and (2) there was insufficient proof the victim sustained a serious bodily injury.[1]

In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. *Id.*

---

[1]The defendant in his Statement of Issues also challenged the sufficiency of the evidence relating to the theft conviction; however, he submitted no argument. Regardless, we conclude the evidence is sufficient to establish that the defendant knowingly exercised control over the stolen truck valued at over $10,000.

Especially aggravated robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear, accomplished with a deadly weapon, and causing the victim to suffer serious bodily injury. Tenn. Code Ann. §§ 39-13-401(a), -403(a).

The defendant first contends there was insufficient proof of the "theft" element of especially aggravated robbery because there was no evidence he took the money bag from the victim. However, there was proof in the record that the defendant gained possession of the bag during the offense. Hawkins testified he told the defendant, "I'll give you the bag. Take it." He stated the defendant took the bag before shooting him in the leg. Viewing the evidence in a light most favorable to the state, we conclude this testimony established the element of "theft."

The defendant further maintains there was no proof the victim sustained "serious bodily injury." Hawkins testified that following the offense, he used crutches and a cane and had a severe limp for two months, and the injury was "very painful" for months after being shot. Further, nearly two years after the offense, he testified that his wounded leg was still not as strong as his other leg. "Serious bodily injury" includes "extreme physical pain" and "substantial impairment of a function of a bodily member." Tenn. Code Ann. § 39-11-106(a)(34)(C), (E). Hawkins' testimony was sufficient to prove he suffered a serious bodily injury when he was shot by the defendant. Accordingly, the proof at trial was sufficient to support the defendant's conviction for especially aggravated robbery.

## II. DEFENDANT'S INABILITY TO VIEW MONITOR

During trial, a police officer testified about photographs taken at the crime scene. The photographs were displayed upon monitors. When the monitor at the defense table malfunctioned, defense counsel moved to a working monitor. Defense counsel then requested that the defendant also be allowed to move to view the monitor. The trial court denied this request by stating, "Is that screen working right there? He can see the photographs later." No further objection was made. When the state passed the witness, defense counsel advised the court he needed to show the photographs to the defendant before he cross-examined the officer. The trial court recessed the trial for the day to allow trial counsel to review the photographs with the defendant.

On appeal, the defendant contends the trial court put the jury on notice that the defendant was in custody and interfered with his ability to assist his attorney when it refused to allow him to move from the defense table. There was no contemporaneous objection to the trial court's remarks, and we cannot envision they prejudiced the defendant in the eyes of the jury. Further, in light of the recess granted by the trial court, the defendant has failed to establish he was prevented from assisting his attorney. This issue is without merit.

## III. SENTENCING

Finally, the defendant challenges his sentences. The trial court sentenced him to the maximum term of twenty-five years as a Range I violent offender for especially aggravated robbery and to the maximum term of ten years as a Range II multiple offender for theft over $10,000.

## A. Standard of Review

A defendant's sentence is reviewed by the appellate courts *de novo* with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). For this presumption to apply to the trial court's actions, there must be an affirmative showing in the record that the trial court considered sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999). While determining or reviewing a sentence, the courts must consider:(1) the evidence received at trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence offered by the parties on the enhancement and mitigating factors; (6) any statement the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103(5), -210(b); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

If the trial court has imposed a lawful sentence by following the statutory sentencing procedure, has given due consideration and proper weight to the factors and sentencing principles, and has made findings of fact adequately supported by the record, this court may not modify the sentence even if it would have preferred a different result. State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000). However, if the trial court does not comply with statutory sentencing provisions, our review of the sentence is *de novo* with no presumption the trial court's determinations were correct. State v. Winfield, 23 S.W.3d 279, 283 (Tenn. 2000).

## B. Sentencing Hearing

No testimony was presented at the sentencing hearing. The record indicated that the defendant had prior felony convictions for aggravated assault, attempted robbery, possession of marijuana with intent to sell, possession of cocaine with intent to sell, and reckless endangerment with a deadly weapon. Further, the defendant had over fifteen misdemeanor convictions and had previously violated probation. The federal Presentence Investigation Report,[2] which is a part of the record, indicates he was adjudicated as a juvenile for possession of cocaine with intent to deliver. The defendant submitted a psychological evaluation report indicating he was mildly mentally retarded, suffered from depression, and had significant problems with substance abuse.

The trial court applied the following enhancement factors to both sentences: enhancement factor (1), the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; enhancement factor (8), the defendant has a previous history of unwillingness to comply with conditions of a sentence involving release in the community; and enhancement factor (20), the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. *See*

---

[2]The defendant was also charged and convicted in federal court on charges arising from this incident.

Tenn. Code Ann. § 40-35-114(1), (8), (20) (1997).[3] It applied enhancement factor (10), the defendant had no hesitation about committing a crime when the risk to human life was high;[4] and enhancement factor (11), the felony resulted in bodily injury and the defendant has previously been convicted of a felony that resulted in death or bodily injury,[5] to the especially aggravated robbery sentence. *See id.* § 40-35-114(10), (11). Although the defendant contends the trial court applied these two factors to the theft conviction also, the trial court's findings do not indicate this was the court's intent. It applied enhancement factor (9), the defendant possessed a firearm during the commission of the offense, to the sentence for theft over $10,000. *See id.* § 40-35-114(9). Further, it found that the defendant's mild mental retardation had limited application as a mitigating factor. *See id.* § 40-35-113(8).

The defendant argues the trial court erred in applying enhancement factor (9) to the theft sentence. He also maintains the trial court erred in not applying mitigating factors and in imposing consecutive sentencing.

## C. Enhancement/Mitigating Factors

The defendant maintains the trial court misapplied enhancement factor (9) to the defendant's theft sentence. The statute merely requires that "the defendant possessed" a firearm during commission of the offense. *Id.* § 40-35-114(9). We conclude the proof in the record supports the application of this factor because the defendant was carrying a loaded weapon at the time he was exercising control over the stolen truck.

The defendant also argues that the trial court erred in not applying mitigating factor (3), substantial grounds exist tending to excuse or justify the defendant's criminal conduct; mitigating factor (8), the defendant was suffering from a mental condition that significantly reduced his culpability for the offense; and mitigating factor (12), the defendant acted under the duress or under the domination of another person. *See id.* § 40-35-113(3), (8), (12). The trial court did apply mitigating factor (8) based on proof the defendant suffered from mild mental retardation. However, the trial court gave this factor little weight. The defendant claims the other mitigating factors apply because the defendant told police he committed the robbery at the request of other people. The record supports the trial court's determination the defendant's mental deficiencies are the only applicable mitigating proof. Further, the trial court did not err in giving it little weight nor in failing to reduce the sentences because of this slight mitigator.

---

[3]Effective July 2002, the legislature amended Tennessee Code Annotated section 40-35-114 by adding "terrorism" as an enhancement factor. 2002 Tenn. Pub. Acts, ch. 849, § 2(c). This is listed as factor (1), thus renumbering the previous factors as (2) through (23). *See* Tenn. Code Ann. § 40-35-114 (Supp. 2002). Our opinion refers to the enhancement factors as they existed at the time of sentencing as specified in Tennessee Code Annotated section 40-35-114 (1997).

[4]This was based upon the risk to Ms. Stevens who was near the defendant and the victim as they struggled over the gun.

[5]This was based upon the prior aggravated assault conviction which resulted in bodily injury to the victim.

Based upon our review of the record, we conclude the twenty-five-year sentence for especially aggravated robbery and the ten-year sentence for theft over $10,000 are justified by the applicable enhancement factors. We decline to disturb the sentences imposed by the trial court.

## D. Consecutive Sentencing

The defendant also maintains the trial court erred in imposing consecutive sentences. We do not agree.

A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

> (1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) [t]he defendant is an offender whose record of criminal activity is extensive;
>
> . . .
>
> (4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> . . . .

Tenn. Code Ann. § 40-35-115(b)(1), (2), (4); *see also* Imfeld, 70 S.W.3d at 708.

In the case under review, the trial court found all three of the above factors supported consecutive sentencing. We need not address whether the trial court erred in finding the defendant to be a professional criminal and a dangerous offender.[6] The record clearly established that the defendant had an extensive record of criminal activity. This finding alone is sufficient to support consecutive sentencing. *See* State v. Adams, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997). Therefore, we conclude the trial court did not abuse its discretion in imposing consecutive sentences.

## CONCLUSION

The evidence was sufficient to support the defendant's convictions. The trial court did not err in refusing to allow the defendant immediate access to a monitor used for viewing evidence

---

[6]We question whether the defendant's prior record supports a finding that the defendant's "major source of livelihood" was from criminal acts. *See* Tenn. Code Ann. § 40-35-115(b)(1); State v. Darrell M. Scales, No. M2000-03150-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 33, at *30 (Tenn. Crim. App. Jan. 11, 2002, at Nashville), *perm. to app. denied* (Tenn. 2002). We further note the trial court did not make the necessary findings to classify the defendant as a dangerous offender. *See* State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

during trial.  Finally, the record on appeal supports the sentences imposed by the trial court. Accordingly, we affirm the judgments of the trial court.

_____
JOE G. RILEY, JUDGE